PEOPLE ex rel. KLEIN v. McDONALD et al.

(Supreme Court, Special Term, New York County. March 2, 1896.)

1. MANDAMUS—WHEN GRANTED.
    A writ of mandamus should not issue to restrain one from doing that
    which it is his statutory duty to do.

2. SAME—DEMAND AND REFUSAL.
    A demand and a refusal are usually held to be essential prerequisites to
    the issuance of a writ of mandamus.

3. JUDGES—DUTIES.
    A single judge should not declare an act of the legislature unconsti-
    tutional except in a case in which there can be no rational doubt.

4. CONSTITUTIONAL LAW—ELECTIONS.
    Const. art. 2, § 5, provides that certain elections "shall be by ballot, or
    by such other method as shall be prescribed by law, provided that secrecy
    in voting be preserved." Held, that it is doubtful whether, "provided that
    secrecy in voting be preserved," qualify the word "ballot," or apply solely,
    to the phrase, "or by such other method as may be prescribed by law."

5. SAME—SECRET BALLOT.
    Const. art. 2, § 1, provides that "every male citizen," properly qualified
    by age and residence, "shall be entitled to vote." Held, that, if the consti-
    tution also requires a secret ballot, the requirement must be read in con-
    nection with section 1, and both be given full effect, if possible.

6. SAME.
    The proviso in Const. art. 2, § 5, that secrecy in voting must be preserved,
    does not imply that the ballot shall be cast in such a manner that no one
    but the voter shall know for whom it is cast.

Application by the people, on the relation of Isaac H. Klein, for
a writ of mandamus against James J. McDonald and others. Appli-
cation denied.

Leavitt, Wood & Keith (Wheeler H. Peckham, Horace E. Deming,
and John Brooks Leavitt, of counsel), for relator.

Francis M. Scott, Corp. Counsel (Terence Farley, of counsel), for
respondents.

ANDREWS, J. I have reached the conclusion that this applica-
tion should be denied, but as it was not made until the last day of
the term, and an immediate decision has been requested by the coun-
sel for the relator, and as at least a hundred motions, previously ar-
gued, require my early attention, I can only state the grounds for
such conclusion briefly.

1. A writ of mandamus is not a proper or allowable remedy in this
case. What the relator asks is, not that the court will compel the
respondents to do something, but that it will restrain them from do-

ing certain things which the statute expressly requires them to do. Courts have sometimes gone a long way in granting what are called "mandatory" injunctions, but I do not think there is any precedent, or authority of law, for granting the writ asked for in this case, which may be called an "injunctive mandamus." Moreover, no demand has been made upon the inspectors that they refrain from doing the things which the relator asks to have them restrained from doing, nor is any evidence submitted tending to prove that the inspectors would refuse to comply with such demand if made, although such demand and refusal have usually been held to be essential prerequisites to the granting of the writ.

2. It has been repeatedly held that a single judge ought not to declare an act of the legislature unconstitutional, unless a case is presented in which there can be no rational doubt, and I do not think that this is such a case. The application of this rule is especially called for in a proceeding like this, where it is sought to have very important provisions of the election law declared unconstitutional, and where, as was stated upon the argument, the legislature persisted in adopting these provisions, although the objection that they would be unconstitutional was presented to it, and where, if the court should be mistaken, and such provisions should eventually be held to be constitutional, the inspectors of election, if they should obey the writ, would be liable, under section 41 of the Penal Code, to three years' imprisonment, or to a fine of $3,000, or to both.

3. I do not think it is by any means clear that the provisions of the election law above referred to are unconstitutional. In the first place, it is doubtful whether the last clause of section 5, art. 2, of the constitution, consisting of the words, "provided that secrecy in voting be preserved," qualify the preceding word "ballot," or whether they do not apply solely to the preceding phrase, "or by such other method as may be prescribed by law." In Pearson v. Board (Va.) 21 S. E. 483, it was said that "the vote by ballot ex vi termini implies a secret ballot"; and, if this statement is correct, there was no occasion for the makers of our constitution to provide that elections should be by ballot, "provided that secrecy in voting be preserved" (article 2, § 5); but there was occasion for providing that, when elections were not held by ballot, but "in such other method as may be prescribed by law," secrecy in voting should be preserved. In the second place, whether the words, "provided that secrecy in voting be preserved," do or do not qualify the preceding word "ballot," and assuming that the voting is to be by "secret" ballot, it by no means follows that the provisions of the election law above referred to are unconstitutional. Section 5, art. 2, of the constitution, must be read in connection with section 1 of the same article, and, if possible, full effect must be given to both. Under the latter section the illiterate man has a right to vote, but under the former he must vote by "secret" ballot.

The learned counsel for the relator insist that voting by "secret" ballot and the proviso in said section 5 that secrecy in voting shall be preserved imply that the ballot shall be cast in such a manner that no one but the voter shall know for whom the ballot is cast.

But the constitution does not so prescribe, and no evidence has been submitted to the court which tends to prove that it is possible to frame a statute under which persons otherwise qualified, but who cannot read or write, or who are physically unable to prepare their ballots, can vote without permitting some other person or persons to know the contents of their ballots; nor has any evidence been submitted which tends to prove that a statute can be framed which would permit the illiterate and physically incapable to vote, and at the same preserve "secrecy in voting," more completely than does the act passed by the legislature. Even if the present statute is not the best that can be devised, it does not follow that it violates the constitution. Assuming that a statute which provides how the illiterate and physically incapable shall cast their votes must preserve secrecy in voting, as the constitution does not prescribe how this shall be accomplished, the legislature has a wide discretion in the matter, and the court should certainly hesitate about declaring an act unconstitutional merely because, in the opinion of the court, some provisions different from those adopted by the legislature would be more effectual for the preservation of secrecy in voting.

The questions involved in this application received very full consideration in the case of Pearson v. Board, supra. The state of Virginia had adopted an election law based upon the "Australian system," and a most determined effort was made to have it declared invalid. An action was brought to restrain a board of supervisors from paying certain expenses of an election held under this law, which, it was claimed, violated the constitutions of the United States and of the state of Virginia in many respects. Among other things, this law authorized certain election officers to appoint special constables, whose duty it was to prepare ballots for the illiterate and those who were physically incapable of preparing their own ballots. This provision was assailed on the ground that it authorized an interference with the "secrecy of the ballot," and therefore violated the constitution of Virginia, which provided that elections should be by ballot, though it does not appear from the case that such constitution contained any provision like the last clause of section 5 of article 2 of our own constitution. The lower court dismissed the bill, and the supreme court of appeals of Virginia, composed of five judges, affirmed the decision. Keith, J., who delivered the opinion of the court, said:

"The vote by ballot ex vi termini implies a secret ballot. The secrecy of the ballot is a right which inheres in the voter, and of which he cannot, against his will, be lawfully deprived. It must be, however, in some degree subordinate to the right to vote by ballot, of which it is but a part, and the main object, which is the right to vote, must not be defeated by a too rigid observance of the incidental right, which is that of secrecy."

The whole subject of "secrecy in voting" and the "secret ballot," and the power of the legislature to interfere with such "secrecy," were considered at length, and the statute was upheld.

This case was hotly contested, and was decided as lately as April, 1895, and is an authority against the contention of the counsel for the relator. If the word "ballot," in section 5 of article 2 of our

constitution, is not qualified by the words, "provided that secrecy in voting shall be preserved," then the decision is an interpretation of a provision of the constitution of Virginia which is the same as that contained in ours. If the said word "ballot" is so qualified, nevertheless the decision is equally applicable, because the court reached its conclusion upon the assumption that the word "ballot" means a "secret" ballot, and that is all that our constitution provides for, even if the said word "ballot" is so qualified. I sympathize with the learned counsel for the relator in their efforts to secure honest elections; but, in view of my convictions on some points, my doubts in regard to others, and of the decision in the Virginia case above referred to, I cannot grant this application.