ECONOMIC POWER & CONSTRUCTION CO. v. CITY OF BUFFALO et al.

(Supreme Court, Trial Term, Erie County.)

1. STATUTES—CONSTRUCTION—SPECIAL ACTS—SUBJECT AND TITLE.
An act to incorporate the Economic Power & Construction Company (Laws 1893, p. 949, c. 459), creating a corporation and giving it power to transmit and utilize power between any points in the state, is a private bill within Const. art. 3, § 16, providing that no private or local bill passed by the Legislature shall embrace more than one subject, which shall be expressed in the title, though the bill specifically states that the powers thereby conferred are expressly declared to be a public purpose, and their use by the corporation a public use.

2. CONSTITUTIONAL LAW—STATUTES—PRESUMPTION OF VALIDITY.
Every presumption is in favor of the validity of legislative acts which are to be upheld, unless there is a substantial departure from the organic law, and their propriety and wisdom are matters with which the courts have no concern.

3. STATUTES—SPECIAL ACTS—DISCRETION OF LEGISLATURE—CONSTITUTIONAL PROVISIONS.
Const. art. 8, § 1, providing that corporations shall not be created by special act, except in cases where in the judgment of the Legislature the object of the incorporation cannot be attained by general laws, vests in the absolute discretion of the Legislature the determination whether a special act of incorporation in a given case is necessary, and its decision is not reviewable by the courts.

4. SAME—SUBJECTS AND TITLES—SPECIAL ACTS.
The subject of a special act to create a corporation is the creation of the corporation for the purposes and with the powers stated in the act, and all the details as to its powers and authority are objects of the corporation, and not subjects of the act; and hence "An act to incorporate the Economic Power & Construction Company" (Laws 1893, p. 949, c. 459), which provides in detail for the organization of the corporation, enumerates the objects for which it is formed, the amount of capital stock, location of principal office, and describes certain powers and privileges granted, etc., which relate directly to the particular corporation created, and its organization, purposes, and powers, embraces only one subject, and is not violative of Const. art. 3, § 16, providing that no private or local bill shall embrace more than one subject, which shall be expressed in the title.

5. SAME—GENERAL AND SPECIAL FRANCHISES.
The fact that a special act of incorporation includes both a general franchise to exist as a corporation, and also among the powers which it may possess a special franchise to occupy the streets and highways of the state which is not mentioned in the title does not render the act violative of Const. art. 3, § 16, providing that no private or local bill shall em-

brace more than one subject, which shall be expressed in the title, since the special franchise is simply a power granted by the act.

6. CONSTITUTIONAL LAW—STATUTES—VALIDITY—JUDICIAL DUTY.

A statute should not be *held* unconstitutional by a court of original jurisdiction, except in a clear case.

7. MUNICIPAL CORPORATIONS—STREETS—TITLE OF MUNICIPALITY.

The power to use and regulate the use of city streets is vested absolutely in the Legislature, and may or may not be delegated to the municipality, and, even where it holds the fee to its streets, it holds them as the state's agent for the public use of the people of the state, and not as corporate property.

8. EMINENT DOMAIN—FEE IN ABUTTING OWNER—POWER OF CITY TO PREVENT INTERFERENCE WITH RIGHTS.

Where additional burdens have been imposed upon streets the fee of which remains in abutting owners, the owners themselves may seek redress if they choose, but the city is not a trustee for them as regards the enforcement of their private rights, and has no power to interfere.

9. INJUNCTION—DECREE—TERMS IMPOSED.

Where injunctive relief is sought against a city by a company entitled to use its streets, the court in giving relief may in its discretion impose terms for the protection of the city.

Action by the Economic Power & Construction Company against the city of Buffalo and others for an injunction. Writ granted.

Simon Fleischmann and Herbert B. Bissell, for plaintiff.
Louis E. Desbecker and John W. Ryan, for defendants.

MARCUS, J. This action is brought by the Economic Power & Construction Company against the city of Buffalo and its officials to restrain the defendants from interfering with the plaintiff's entry upon the streets of Buffalo and excavating trenches therein for the purpose of laying its steam mains and electric conduits, through which it proposes to furnish steam heating and electricity for lighting and power purposes to the city and its inhabitants.

The company claims the right to use the streets of the city and all other cities and the highways of the state, generally, without the consent of the local authorities, pursuant to a direct franchise and right so to do obtained from the Legislature, under its special act of incorporation (chapter 459, p. 949, Laws 1893). Under this act, George H. Thacher, William G. Rice, and Augustus P. Smith were created a corporation under the name of "Economic Power & Construction Company," which was given large powers, including the right to create, transmit, and utilize power between any points selected from time to time within the state, for any purpose except railway business, or the transmission of mail matter or parcels. Sections 1, 2. The original capital stock was fixed at $50,000, with power to increase the same and with power to borrow money and to issue its obligations therefor, and to secure the payment of the same by mortgaging its properties and franchises (section 2), the capital stock to be issued for money, property, or services (section 4): The company is then empowered, "without other or further authority of law or ordinance," to acquire power stations and machinery, to construct tubes for the utilization and transmission of the power to be supplied, and for such purposes, to enter upon and use the ground under any street, public place, or high-

way of the state; to enter upon such real property as it may require for its purposes, or in the exercise of its powers, which are expressly declared to be a public purpose and their use a public use; to purchase real property or to acquire the same by condemnation proceedings (section 5); and to have the general powers and privileges granted to corporations by the general corporation law and the stock corporation law (section 7). The stockholders are made liable to an amount equal to the stock held by them for its debts until the whole capital stock shall have been fully paid in (section 8).

Considerable evidence was offered on behalf of the plaintiff to show that the company has from its creation to the present time been engaged in various enterprises and operations, involving the creation, transmission, and utilization of various kinds and forms of power in different municipalities of the state, and that numerous large financial transactions have resulted therefrom, under which the company and other corporations have acquired vested rights, and under and by reason of which heavy financial obligations have been created and assumed which are outstanding. The facts in the case were indeed entirely undisputed, and presented only questions of law. The complaint and proof showed that in January, 1907, the plaintiff sent a communication to the commissioner of public works of the city of Buffalo, stating its intention to lay steam mains in trenches in certain streets of the city, for the transmission of steam power for heating purposes in residences, places of business, and manufacturing establishments, and in the same trenches to lay conduits for the transmission of electric power for general lighting and power purposes, to be generated by the same steam which was to be used for heating purposes, and the plaintiff in connection with said communication filed plans and specifications of its proposed structures. The commissioner submitted this communication and the plans to the common council, and the board of aldermen referred the matter to its committee on streets, which held public meetings during the spring of 1907, but never made any report on the matter. The plaintiff also presented to the committee on streets various regulations and conditions, recognizing the police power of the city, under which it was willing to build its structures and to furnish its products to the citizens, and the company appears generally to have adopted a conciliatory policy towards the city, and to have sought its good will and co-operation in its enterprise, but without encouragement or response from the city authorities. After waiting some months, the company in the fall of 1907 sent a further communication to the commissioner of public works and to the common council, reciting its previous proceedings and the failure of the city to act upon its prior communications, and announcing definitely that it now proposed to enter upon certain streets in the city and to begin the construction of its structures and to raise funds therefor and to incur liabilities in connection therewith, and the company further stated that, in the performance of its work, it proposed to observe certain regulations which it likewise communicated to the city authorities and which appear to be in accordance with precedent and to be reasonable. Thereupon and early in October, 1907, the common council adopted

a stringent resolution, which was approved by the mayor, directing the commissioner of public works and the superintendent of police to prevent the company and its employés from entering upon or disturbing the streets of the city, or laying its mains or conduits in any of the streets, and directing the corporation counsel to defend the city in the premises, and recommending other drastic legal measures against the company. About the middle of October, 1907, the company gave definite notice to the commissioner of public works that the company, would commence the work of excavating Summer street, in Buffalo, a few days thereafter, and to lay its mains in the streets previously specified, and at the time indicated by it the company's contractor and employés appeared upon the scene with workmen and materials, prepared to go on with the work, when they were summarily stopped by a squad of policemen, and the company has been prevented from doing any further work in the city of Buffalo. The plaintiff thereupon promptly brought the present action to restrain the city from further interfering with its work, but is willing that its work should be done under reasonable regulations and conditions to be prescribed by the court.

The answer contained certain formal denials of some of the allegations of the complaint which allegations were, however, proved to the satisfaction of the court, and it may be broadly stated that all the facts of the complaint were proved by uncontroverted and satisfactory evidence. The answer also contained two affirmative defenses—one to the effect that the plaintiff had not commenced the transaction of its business or undertaken the discharge of its corporate duties within two years from its incorporation, and the other that the plaintiff did not obtain from the public service commission permission to build its structures. Neither of these contentions, however, was discussed by the defendants in the brief submitted by them, but the principal defense urged by defendants against plaintiff's rights to proceed with its work was that the act of incorporation of the plaintiff, "An act to incorporate the Economic Power & Construction Company," was unconstitutional, in that it violated section 16 of article 3 of the Constitution of this state, which provides that no private or local bill passed by the Legislature shall embrace more than one subject, which shall be expressed in the title. After the case had been submitted, defendant's counsel was permitted to reopen it to introduce evidence showing that the fee of some of the streets of the city of Buffalo was in the city and that of others, not in the city, but in the abutting owners, and it was claimed that the city had the right to prevent the plaintiff from entering upon those streets the fee to which remained in the abutting owners. These two propositions will be considered separately, and I shall first take up the question of the constitutionality of the act and the claim of the defendants in regard thereto. I have come to the conclusion that the act in question is a private bill, within the meaning of the constitutional provision referred to and have so treated it, although the act specifically states that the powers thereby conferred are expressly declared to be a public purpose and their use by the corporation a public use (section 5).

The counsel for the defendants takes the position that the act of incorporation of plaintiff conferred two franchises, the franchise to exist as a corporation, which is known as a general franchise, and the franchise to use the streets and highways throughout the state, known as a special franchise, and that the act thus either embraces two subjects, which could not be included in any private bill, or that, if the special franchise be deemed so germane to the creation of the corporation that it could lawfully be included in the same act, the title should have indicated the presence of the additional connected matter. The charter of this company is doubtless receiving, and will continue to invite, unusually close scrutiny at this time, in view of the large powers which it confers, and because of the well-marked recent tendency to ·restrict corporate powers, and to lodge with municipalities a greater degree of control over their exercise than formerly. The act of incorporation, however, remains upon the statute books of this state unrepealed and unamended, and the jurisdiction of the courts, under such circumstances, has been well defined by the Court of Appeals in People v. Briggs, 50 N. Y. 558, where the court says:

"Every presumption is in favor of the validity of legislative acts, and they are to be upheld unless there is a substantial departure from the organic law. Courts have no concern with the propriety or wisdom of legislation. That power has been committed by the Constitution to the legislative department of the government, and with its exercise courts cannot interfere. They can only determine whether in a given case the Legislature has exceeded its authority or violated any provision of the Constitution, and, when this point is decided, their duty is performed."

The same principle is recognized in Village of Carthage v. Central N. Y. Telephone Company, 185 N. Y. 448, 453, 78 N. E. 165, 166, 113 Am. St. Rep. 932, where the right of the telephone company to go over or under a street, under its direct franchise from the state, free from municipal interference, was recognized; the village having asserted the right to compel the telephone company to place its wires underground. The court, in denying this power, said:

"As the law now stands, the company is at liberty to decide whether it will go on, over, or under a street, subject to the right of the state to revoke its license. Opinions may differ as to which policy should prevail, in view of the rapid increase of telephone companies and the disfigurement of streets by the erection of a large number of poles, each company placing its own. Be this as it may, it is clear that no such power as is claimed by the respondent is at present vested in villages of the state."

So, in Rochester & L. O. W. Co. v. City of Rochester, 176 N. Y. 36, 44, 68 N. E. 117, the wisdom of the statute allowing water companies to lay pipes through city streets without local consent was vigorously assailed, but the court held squarely that it had no power to review such legislative discretion.

In other words, the question here presented for determination is whether the Legislature creating this corporation as evidenced by the act under discussion exercised its power within the limits which the people of the state themselves established and expressed in the Constitution. If it did, the court should not embarrass or restrict the Legislature and defeat the will of the people, as expressed by their representatives at the time of the passage of the act, nor should it attempt

to substitute its judgment for that of the legislators, however unwise such legislation may be deemed by the court, for clearly that would be substituting the authority and judgment of the court for that of the Legislature, and would obviously be a usurpation of judicial power. Relief must come, if at all, from the Legislature itself, if subsequently acquired vested rights do not stand in the way, and not from the courts, whose sole duty it is to determine whether the act contravenes the Constitution. No relief should be expected from an arbitrary ruling rendered to satisfy public sentiment at any given period, as that would destroy the balance of government by an assumption of authority which, in the long run, could only prove detrimental to orderly democratic government. It was aptly said by Allen, J., in People v. Albertson, 55 N. Y. 50, that:

"No motive, purpose, or interest can be imputed to the Legislature, in the enactment of a law, other than such as is apparent upon its face and to be gathered from the terms of the law itself."

Having these general principles in mind and applying them to the pure question of law presented, I have been led to the conclusion, after careful deliberation, that the act in question does not violate the constitutional provision under consideration. In reaching this determination, another provision of the Constitution—section 1 of article 8 is to be borne in mind, to the effect that corporations may be formed under general laws, but shall not be created by special act, except, in cases where, in the judgment of the Legislature, the objects of the corporation cannot be attained under general laws. This latter provision of the Constitution has been construed as reposing in the absolute discretion of the Legislature the determination of the question whether a special act of incorporation in a given case is necessary or not, and that the action of the Legislature in this respect is never reviewable by the courts. Matter of Union Ferry Co., 98 N. Y. 150. It is thus to be conclusively presumed that in the judgment of the Legislature the objects of the Economic Power & Construction Company could not be attained under general laws, and that for this reason, the special act in question was passed. It must follow from the fact that this corporation was created by special act that it would have features and powers of a special, or unusual, or extraordinary character, and during the pendency of this act in the Legislature and before its approval by the Governor all persons interested in knowing these exceptional features and powers were apprised that such features and powers would be found in the act from the very fact that it was a special act of incorporation, as shown by its title. Any other interpretation of the constitutional provision requiring the subject of a private bill to be expressed in the title would lead to much uncertainty and confusion, and if carried to an extreme, would result in the requirement that the title of such a bill should be, in effect, an index or digest of its contents, whereas, it has been expressly held that this is not necessary. Matter of Application of Mayor of City of New York, 99 N. Y. 576, 2 N. E. 642.

The constitutional provision in question is found generally in the Constitutions of the various states, and has received consideration in a multitude of decisions, most of which throw little light on its present

application. However, we are not without authority closely in point, and which, as it seems to me, must determine the question in favor of the plaintiff. In Freeman v. Panama R. R. Co., 7 Hun, 122, 123, an act entitled "An act to incorporate the Panama Railroad Company," was attacked on the same ground as the present act and held constitutional, notwithstanding its numerous provisions and the varied powers it granted, and court saying:

"The subject of the act is the creation of a body corporate * * * for the purposes and having the powers specified in the act. This subject of necessity embraces a number and variety of details, all of greater or less moment to the organization of the body corporate, and proper, if not essential to be expressed in the act. They relate to * * * the extent and character of the business which the corporation may carry on, and the powers and authority which it may use for that purpose. All these details and as many more of like character, as the act embraces, are objects of the corporation, the creation of which is the subject of the legislative act; and, so long as those objects are limited by the act to one body corporate, they constitute in mass the single subject which the act must contain and which the title may express in the form adopted in this case under the provisions of the constitution above recited. To hold otherwise is to hold that the title of the act must contain all these details and set forth every power, duty, and obligation of the body corporate."

A learned and convincing discussion of this subject by the late distinguished Chief Justice Bleckley, of Georgia, will be found in Goldsmith v. Rome R. R. Co., 62 Ga. 473, in which the validity of an act entitled "An act to incorporate the Rome Railroad Company" was questioned on the same grounds. The court analyzed the purposes of the constitutional provision and the principles which should govern its application, and held that in an act incorporating a body there could be contained such attributes, powers and privileges as well as such duties and liabilities as in the judgment of the Legislature should be necessary or proper for such enterprise; that all grants of powers and privileges are to be deemed a part of the work of incorporation, and, when the Legislature is engaged in doing these things for a company, it is incorporating it and not doing something different from an act of incorporation. Stress was also laid upon the fact that it had been the practice of the government during its history so to entitle special acts of incorporation, thus giving a practical construction to the constitutional provision which was entitled to weight. See, also, Atwell v. Parker, 93 Minn. 462, 101 N. W. 946; Diana Club v. Lamoreux, 114 Wis. 44, 89 N. W. 880, 91 Am. St. Rep. 898; State v. Board, 85 Minn. 165, 88 N. W. 533; City v. Missouri Co., 70 Kan. 441, 78 Pac. 886; Detroit v. Detroit Ry. Co., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592; Blair v. City, 201 U. S. 400, 26 Sup. Ct. 427, 50 L. Ed. 801; Montclair v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. Ed. 431; Mahomet v. Quackenbush, 117 U. S. 508, 6 Sup. Ct. 858, 29 L. Ed. 982; Sweet v. City, 129 N. Y. 316, 27 N. E. 1081, 29 N. E. 289; Matter of Clinton Avenue, 57 App. Div. 166, 68 N. Y. Supp. 196; N. Y. Board v. Whipple, 2 App. Div. 361, 37 N. Y. Supp. 712. In this connection the words of Emott, J., in People v. Lawrence, 36 Barb. 192, and emphasized in other cases, are appropriate:

"It must not be overlooked that the title of an act shall express the subject, not the object, of the act. * * * It is no constitutional objection to a

statute that its title is vague and unmeaning as to its purposes, if it be suffi-
ciently plain as to the matters to which it refers"—quoted with approval in
Freeman v. Panama R. R. Co., supra.

Having these principles in mind, it seems clear that the act in question does not embrace more than one subject, and that this subject is fairly expressed in the title. An examination of the act shows that it provides in detail, for the organization of the corporation, contains a statement of the various matters required by law to be set forth in the certificate of any incorporation provided for in the business corporations law; that the name of the proposed corporation is mentioned, the objects for which it is formed are enumerated, the amount and description of its capital stock specified, together with the number of shares of which it shall consist; that the location of its principal business office is designated, and the names of its directors for the first year are given; that it describes certain powers and privileges which are granted to the corporation, and also certain liabilities imposed upon the stockholders; and that, in short, all of the provisions of the act relate directly to the particular corporation thereby created and its organization, purposes, and powers, and nothing contained in the act can reasonably be said to be extraneous matter, and not pertinent to the main act of incorporation.

I have given careful consideration to the ingenious argument of the counsel for the defendants that the act of incorporation of the Econoic Company confers two franchises—one, the general franchise to exist as a corporation, and the other a special franchise to use the streets and highways throughout the state, and that the act in question, therefore, either has two subjects which could not be embraced in a single private law, or, if the granting of these two franchises can properly be regarded as relating to one subject, the special franchise should have been mentioned in the title. It does not seem to me, however, that the fact that the act confers these two so-called franchises leads to either conclusion contended for by the defendants' counsel. The distinction between the two franchises is pointed out in People ex rel. Metropolitan Ry. Co. v. State Board, 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674, where the newly enacted special franchise tax act was under consideration, which provided that the right to construct, maintain, or operate structures for public use in public streets, highways, or places constituted a special franchise which was made real estate for purposes of taxation. Probably not even such a special franchise could be taxed until it was actually used, and then only to the extent to and in the place in which it was used. In other words, the inchoate special franchise is not the subject of taxation. But, however that may be, it seems to me that it cannot possibly be a constitutional objection to a private act of incorporation by the Legislature that it includes in one special act the general franchise to exist as a corporation, which would of itself be quite useless, and the powers which it is to possess and which may include what is now called, for special taxing purposes, a special franchise to occupy the streets and highways of the state and its municipalities, or that the so-called special franchise is not mentioned in the title of the act. The special franchise

granted is as much a power granted by the act as any other power that it may grant, although it may be greater or more valuable than any other. Nor would the special franchise be any less a special franchise if the act of incorporation required the consent of local authorities to its exercise. The Legislature could grant the right to occupy public streets directly to the corporation it created, or conditionally upon the corporation obtaining the local consent. In either event, the Legislature is the source of the power granted, and this power is an element of the act of incorporation and not a separate thing or one calling for emphasis or announcement in the title of the act, any more than any other power granted by the act of incorporation. "An act to incorporate the Malone Waterworks Company" (chapter 156, p. 349, Laws 1857), and granting enormous powers to the company, similar to those in the present case, was held constitutional. In re Malone Waterworks Company (Sup.) 15 N. Y. Supp. 649. Likewise "An act to incorporate the Niagara, Lockport and Ontario Power Company" (chapter 722, p. 1806, Laws 1894), and giving similarly extensive powers, was held constitutional in condemnation proceedings by the Supreme Court and affirmed by the Appellate Division, Fourth Department, without opinion, as appears from the original record, and the decision reported. In re Niagara Co. v. Weaver, 113 App. Div. 888, 98 N. Y. Supp. 1109. The last mentioned act granted the largest powers to enter the streets of municipalities without the local consent. Other special or private acts of incorporation passed by the Legislature of this state are cited, granting direct power from the state to enter and use the streets of municipalities and other highways, without local consent, which have been assumed to be constitutional, and whose validity has not been attacked. Among these may be mentioned, in addition to those already referred to, "An act to incorporate the Lewiston Water Supply Company in Niagara County, N. Y." (chapter 561, p. 918, Laws 1888); "An act concerning the Niagara Falls Power Company" (chapter 477, p. 973, Laws 1893); "An act to authorize, the Queen City Gaslight Company of Buffalo to supply gas in the city of Buffalo" (chapter 556, p. 1197, Laws 1893), in which last-mentioned charter, passed the same year as that of the Economic Company, the same language is used in granting the right to the gas company to lay its mains in the streets of the city of Buffalo as in the Economic charter, viz., "without other or further authority of law or ordinance." General acts of incorporation have also been passed by the Legislature, and some of them in recent years, granting powers similar to those granted to the Economic Company to enter upon and to use the public streets upon and beneath their surface, without local consent and subject only to municipal police regulation. Among these may be mentioned the general public telephone act, under which telephone companies may use city streets by virtue of the direct grant by the Legislature of the right to use the same and without the consent of the local authorities. Transportation Corporations Act, section 102, Laws 1890, p. 1152, c. 566; Barhite v. Home Telephone Co., 50 App. Div. 25, 63 N. Y. Supp. 659; Wright v. Glen Telephone Co., 112 App. Div. 745, 99 N. Y. Supp. 85; Village of Carthage v. Central N. Y. Telephone Co., 185 N. Y. 448, 78 N. E. 165, 113 Am. St. Rep. 932. So, under the

provision of the transportation corporations act, authorizing a water
company to lay its pipes in the streets of a city adjoining a municipal-
ity to which said company has the right to supply water, it was held
that such water company had the right to lay its pipes through the
streets of such adjoining city without its consent or permission, and
that such company was entitled to an injunction restraining the city
authorities from interfering with the exercise of this right, derived, as
it was, directly from the Legislature; and it was further held that
subsequent amendatory legislation by the Legislature, requiring the
local consent, was invalid and unconstitutional, as against a water com-
pany which had acquired vested rights before such new legislation was
had. Rochester & L. O. W. Co. v. City, 176 N. Y. 36, 68 N. E. 117.
To hold the charter of the Economic Company unconstitutional upon
the grounds urged would doubtless cause a widespread disturbance of
vested rights acquired and acted upon in good faith under numerous
special charters having similar titles; and the seriousness of the con-
sequences involved, even if there were doubt as to the constitutionality
of the act in question, should deter the trial court, in the first instance,
from holding the act unconstitutional, as the principle that a statute
should not be held unconstitutional by the court of original jurisdiction,
except in a clear case, has received judicial recognition, at least as an
advisory principle. Matter of Fuller's Estate, 62 App. Div. 428, 71
N. Y. Supp. 40; Smith v. Keteltas, 32 Misc. Rep. 111, 66 N. Y. Supp.
260, affirmed, 62 App. Div. 174, 70 N. Y. Supp. 1065; People v. Mc-
Donald (Sup.) 52 N. Y. Supp. 898. Moreover, the questions involved
will doubtless be carried to the Court of Appeals for final settlement
and an appeal by the city will of itself, and without the giving of a
bond on appeal, under section 1314 of the Code of Civil Procedure,
stay all proceedings on the part of the Economic Company until the
final determination of the appeal, so that the interests of the city cannot
suffer in the meantime.

Coming now to the question of the ownership of the fee of the
streets, I have likewise come to the conclusion that this affords no
ground for interference by the city to the use of the streets by the
Economic Company, whether the fee to such streets be owned by the
city or by the abutting owners. As to those of the city streets to which
the city itself has the fee, it is well settled that the city holds such fee
in trust for the public use of all of the people of the state, and not as
corporate or municipal property, and that the municipal corporation is
merely the machinery or agency of the state, and possesses no inherent
or independent authority over the streets. People v. Kerr, 27 N. Y.
188; Matter of Rhinehart, 93 App. Div. 410, 87 N. Y. Supp. 789, af-
firmed, 179 N. Y. 569, 72 N. E. 1150. These authorities and many
others hold that the power to use and to regulate the use of city streets
and to grant rights to use the same is vested in the Legislature abso-
lutely, which may or may not delegate that power to a municipal cor-
poration. Potter v. Collis, 156 N. Y. 16, 30, 50 N. E. 413; Village of
Carthage v. Central N. Y. Telephone Co., 185 N. Y. 448, 78 N. E. 165,
113 Am. St. Rep. 932; Rochester & L. O. W. Co. v. City of Rochester,
176 N. Y. 36, 50, 68 N. E. 117; City v. Elm Co., 69 Kan. 97, 76 Pac.
448. As the Legislature has seen fit to grant directly to the Economic

Company the right to use the public streets of any city without the local consent, such municipality has been vested with no power to prevent such use by the Economic Company, so far as any rights of such municipality and the public are concerned, with the exception of its general police power of regulation as to the manner in which the company may lay its pipes, which the city of Buffalo has failed to exercise. The city, therefore, has no right to interfere with the use by the Economic Company of any of the streets, the fee to which is in the city, nor, so far as the public rights are concerned, in such of the streets, the fee to which is in the abutting owners.

The only question that then remains is whether the city has any right to interfere with the use of the streets by the Economic Company on behalf of the abutting owners, who still own the fee in front of their premises, and I do not think any authority can be found justifying or authorizing such interference, on behalf of strictly private interests, by the city. Such a procedure would involve the city in unending litigation on behalf of private parties, who might not wish to litigate at all. It is, moreover, extremely doubtful whether any abutting owner, owning the fee in front of his premises, could interfere with the particular structures which the Economic Company proposes to construct, as these are all underground; and, as they are to be for the conveyance of steam heat and electric lighting and power, it is not at all certain that they would be considered an added burden upon the fee of such streets. This principle was recognized in a case in this department, with reference to underground conduits for telephone wires. Castle v. Bell Telephone Co., 49 App. Div. 437, 63 N. Y. Supp. 482. But where additional burdens have been imposed upon streets, the fee of which remains in abutting owners, the interference with the rights of such abutting owners has always been regarded as an invasion of private rights, for which the owners themselves could seek redress, if they saw fit. This is illustrated in the recent case of Osborne v. Auburn Telephone Company, 189 N. Y. 393, 82 N. E. 428, in which it was held that the owner of the fee of land to the center of the street, subject to the public easement for the purposes of a street, was entitled to an injunction restraining the telephone company, which had not obtained his consent, from entering upon the streets and erecting poles therein. It seems clear that injunctions for the violation of the same right are not to be favored in behalf of both the abutting owner and the city on his behalf. In other words, if the abutting owner does not wish to prevent or sue for an interference of his private rights, it is no concern of the city to do so in his behalf, as the city is in no sense a trustee for him as regards the enforcement of his private rights.

This principle was clearly recognized in the case of the Rochester & L. O. W. Co. v. City of Rochester, 176 N. Y. 36, 52, 68 N. E. 117, where the pipes of the water company ran through the city of Rochester, principally over private lands of the New York Central Railroad Company, and incidentally across public streets of the city. The point was raised that the city could enjoin the water company, not only from laying its pipes in or across its streets, but upon the land of the railroad company, both of which contentions were overruled—the first,

because the right to lay pipes in the city streets came directly from the
Legislature; and the second, upon the following grounds stated by the
court and applicable to the present case:

"The New York Central & Hudson River Railroad Company is not here
opposing this judgment. The city of Rochester is not interested in the ques-
tion as to whether the plaintiff has obtained from the railroad company a
valid right of way along the company's land. It therefore is not in a posi-
tion to call upon the courts to determine the validity of such title."

The conclusion thus seems irresistible that neither the city nor its
police, nor its public authorities, had any right to interfere with the
Economic Company in laying its mains and conduits in the public
streets of the city, either in the streets owned by the city or in those
in which the fee is still held by the abutting owners. In the case of
the Economic Company charter the Legislature has seen fit to exercise
its undoubted and absolute right to grant to this company the right to
use the streets and highways of the state and its municipalities as it
had previously and has since done in other cases; and it has not seen
fit to make such right dependent on local municipal consent. The mu-
nicipalities, however, would undoubtedly be recognized as having a
general police power over the manner of the exercise of such right,
but not to the extent of preventing the exercise of the right itself. And
this the plaintiff has recognized by submitting to the city authorities
certain regulations under which it proposes to do its work in the city
of Buffalo, which, however, have not been acted upon by the city au-
thorities, nor any others suggested. As this is an equitable action,
however, in which the plaintiff seeks injunctive relief, the court un-
doubtedly has a discretion, which it may exercise for the protection of
the city, in granting to the plaintiff the relief it asks. This was done
in the final judgment granted in the case of Rochester & L. O. Water
Co. v. City of Rochester, above cited, where the court prescribed cer-
tain regulations under which the water company should be allowed to
lay its pipes in the city of Rochester, which regulations were substan-
tially the same as those offered by the Economic Company to the city,
and these should be embodied in the judgment to be rendered herein,
substantially as follows: The structures shall be constructed in ac-
cordance with the plans and specifications filed by plaintiff with the
commissioner of public works. All excavations shall be made so as
not to disturb any water or gas pipes, sewers, or conduits. A free
passage for teams and foot passengers shall be kept open. Trenches
shall be guarded day and night. Steam mains and electric conduits
shall be laid a proper distance below the pavement. Pavements that
may be disturbed shall be restored. Guarantors thereof indemnified.
Plaintiff shall give notice to the commissioner of public works before
beginning work in a given street, and shall pay reasonable expenses of
inspection of the company's work by inspectors appointed by the com-
missioner of public works, and shall observe other reasonable regula-
tions prescribed by him. With these regulations, the city's interests
will be as fully and reasonably protected as can be asked, in view of the
fact that the Legislature has granted no power to the city in connection
with the use of its streets by the Economic Company, but has given

:such power directly to the company, "without other or further author-.
ity of law or ordinance."

It may be mentioned that since this case was tried the Economic Pow-
·er & Construction Company has been successful in a preliminary legal
·contest in the Supreme Court in Ontario county in an action brought
against it by the Geneva-Seneca Electric Company of Geneva, a rival
·electric corporation, which obtained a temporary injunction restrain-
ing the Economic Company from laying electric wires in the public
·conduits of Geneva. The Economic Company is also furnishing steam
heat to the citizens of Geneva, as the successor of the local Geneva
Steam Heating Company. The matter came up before Mr. Justice
Benton, who, after hearing full arguments, in which all of the grounds
·of objection, constitutional and otherwise, to the Economic Company
·charter and proceedings were urged, dissolved the injunction, where-
upon the company resumed its work in Geneva. This precedent, by
a co-ordinate court, naturally confirms me in the conclusions that I
have reached.

I have therefore determined that the plaintiff is entitled to the relief
·asked by the complaint, under the regulations above indicated, and
findings and conclusions in accordance with the views herein expressed
·will be prepared.