RAYMOND C. RODGER, Plaintiff, *v.* AMERICAN KENNEL CLUB, INC., Defendant.

Supreme Court, New York County, October 31, 1930.

*Milo O. Bennett* [*Milo O. Bennett* and *W. Randolph Montgomery* of counsel], for the plaintiff.

*Winthrop, Stimson, Putnam & Roberts* [*Allen T. Klots* of counsel], for the defendant.

COTILLO, J.   This action for libel was tried before the court without a jury, findings being waived and the parties consenting that the court direct a verdict with the same force and effect as though a jury was present.

Defendant concededly published in its official monthly magazine or bulletin on February 28, 1927, that at an annual meeting of defendant's board of directors held February 1, 1927, " charges preferred by Mrs. Wm. A. Brown were read and on motion same were referred to the New York Trial Board for investigation and report."   Although it is alleged that this matter was published of and concerning plaintiff and was false (which is not admitted), there is nothing to connect the article with plaintiff in the minds of the readers save a subsequent article published on May 31, 1927, in the official magazine or bulletin stating that at a quarterly meeting of the board of directors of the American Kennel Club, held May 3, 1927, the report of the New York trial board in the matter of charges preferred by Mrs. Wm. A. Brown against Raymond C. Rodger for misconduct in connection with the sale of the collie " Lovely Lina " was received and its recommendations adopted as follows: " That Raymond C. Rodger, Rouses Point, N. Y., be suspended from all privileges of the American Kennel Club until such times as he complies with the ruling of the Trial Board and returns to Mrs. Brown the purchase price, $50, of the collie, ' Lovely Lina.' "

Inasmuch as each publication relied upon as the basis of a libel action must be made the subject-matter of a separate cause of action, and the first publication alleged is not connected with plaintiff save by the second, we may assume that the former was intended to be pleaded by way of inducement only, and that the latter is the subject-matter of this action.   (*Fleischmann* v. *Bennett*, 87 N. Y. 231; *Burkan* v. *Musical Courier Co.*, 141 App. Div. 202.)

There can be no question but that a Mrs. William A. Brown preferred certain charges against plaintiff arising out of the sale by him to Mrs. Brown of a collie known as " Lovely Lina; " that such charges were referred by defendant's board of directors to its New York trial board; that the latter assumed to hear and determine the controversy between the parties and reported back to the directors, after such hearing, that plaintiff had been guilty of misconduct in the transaction and should be suspended from

the privileges of the American Kennel Club until he complied with the ruling of the trial board and returned to Mrs. Brown the fifty dollars paid by her for the collie; and that the board of directors, upon receiving such report, adopted the report and recommendations made by the trial board. The publication is a true account of what actually transpired. The only question presented is whether defendant was legally within its rights in publishing this accurate report of the proceedings. Plaintiff contends that it had no such right because he had not been guilty of misconduct and because the defendant's directors and trial board had no jurisdiction over him and no legal right to ascertain the nature of his dealings with Mrs. Brown or to characterize his acts in its publications.

If, as a matter of fact, plaintiff *was* guilty of misconduct in the sale of the collie, he can scarcely be heard to complain of the publication, whether or not defendant's trial board had jurisdiction to hear and determine that question. " In civil actions, and against a party coming into a court of justice on a claim for damages, it has long been held, as a rule of the common law, that the truth of the facts imputed constituting the slanderous or libelous charge may be pleaded by way of justification, and if proved constitute a good bar to the action. In such a case, of course, the motive and purpose are immaterial, and cannot be the subject of inquiry. The rule proceeds upon the principle that whatever is the motive, if the charge against the individual is true, if he is in fact guilty of the crime or disgraceful conduct imputed to him, he has sustained no damage for which he can claim redress in a court of justice." (Newell Slander & Libel [3d ed], § 956.) This rule has been adopted by the courts of this State. (*George* v. *Jennings*, 4 Hun, 66, mem.; for opinion see 6 T. & C. 138.) In the case at bar, defendant has pleaded, as a complete defense, the truth of the charge made against plaintiff, viz., misconduct in the sale of a dog. In ascertaining whether plaintiff was actually guilty of misconduct in the transaction, we may be guided by the admonition of Judge CRANE in *Cafferty* v. *Southern Tier Pub. Co.* (226 N. Y. 87, 93): " The libel law is not a system of technicalities, but reasonable regulations whereby the public may be furnished news and information, but not false stories about any one. When the truth is so near the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done."

The transaction between plaintiff and Mrs. Brown is evidenced by letters passing between them and no important facts are controverted. Plaintiff, since 1924, has been a Federal deputy inspector of customs at Rouses Point, N. Y. He had been for some time

prior to that time a breeder of collies, which he sold throughout the United States. Upon assuming his position as deputy inspector, he became less active in the business of breeding, raising and selling of dogs, as the time required for the discharge of his official duties curtailed other activities. He farmed out such dogs as he did not otherwise dispose of, leaving their care and attention to others. Mrs. Brown, at or about the time of the transaction involved, resided at Rocky Mount, N. C., and, as may be gathered from the correspondence, had recently started a collie kennel and was working up a business of raising and selling collies.

On August 23, 1926, plaintiff wrote to Mrs. Brown, apparently in answer to a letter from her in which she had sent him the pedigrees of her dogs and had mentioned her aims. In this letter he stated that he had a collie at Baltimore which " should be bred now to Vic again. * * * I'll let her go for just $50 bred to Vic. * * * If you can use this bitch, her litter by Vic this fall will pay for her 10 times over." The female collie thus referred to, it is conceded, is " Lovely Lina," the subject of the charges later made against plaintiff by Mrs. Brown. " Vic " is plaintiff's registered stud collie, Victorious. On October 19, 1926, plaintiff again wrote Mrs. Brown, apparently in answer to an intervening letter from her. In this letter he stated flatly that Lovely Lina had been bred to Victorious on October fifth, and added: " Let me know by return mail, and enclose check if you want her, as another guy out West is interested in her." Mrs. Brown replied on October twenty-second, inclosing her check in a letter which very fully set forth her offer for the collie. She stated that the check was for the collie quoted to her in plaintiff's first letter " ready bred to Vic." The letter continues: " You understand, this is the only reason I am buying her at all, is for the pups from Vic's breeding. From the way your letter of Sept. 28th read, I understood she had already been bred, but in to-day's letter, you state she was bred the 5th of this month, which would make the pups too young for Christmas delivery; however, they will be here by that time, and I can advertise them, and have people to come out and pick theirs out, leaving a deposit to be delivered from 3 to 5 weeks after Xmas, which will make them about the right age to take away. If you are not sure, she has been bred, and to Vic, please do not accept my check. If you could do so, I should like you to hold her until she is showing in whelp, which if she conceived, should not take long to tell. In case she does not whelp pups, I shall ship her back to you and will expect you to return my $50.00 paid for her. I do not believe you would intentionally misrepresent her or any other dog to me, but if you

haven't got her with you, which I judge by your letters, you have not, it is possible a mistake could be made in regards to breeding, etc., in which case I am sure you would offer a second breeding without charge. But I would not want that, the main and only reason, as already stated above, for buying her is to get pups here by Xmas."

Plaintiff accepted the fifty-dollar check and had the collie shipped to Mrs. Brown, adding further assurances by his letter of October twenty-fifth that the collie had already been bred. He in no manner dissented from the very plain and specific terms under which the check was sent to him, but merely added further assurance that the dog had been bred on October fifth as previously represented. If this was the fact, puppies could be expected, in the course of ordinary events, not later than December seventh. As a matter of fact, none materialized, and Mrs. Brown sought to return the collie and requested the refund of her money. Plaintiff flatly refused to accede thereto, taking the position that no dog fancier could guarantee the desired results. Mrs. Brown thereupon filed written charges with the American Kennel Club, wherein she accused plaintiff of " misrepresentation " in the transaction, basing her charge upon the letters just above referred to. The charges were referred to the New York trial board of the American Kennel Club, which forwarded to plaintiff a copy thereof and gave him opportunity to be heard. He acknowledged the receipt thereof and outlined his defense, which was, in effect, that he could not guarantee results, and that he had offered Mrs. Brown certain things in lieu of the return of her money. He closed his letter to the board by asking that he be given a fair hearing. For the purposes of the present point under discussion, the subsequent correspondence between plaintiff and the trial board is not material save to note that plaintiff was found to be guilty of misconduct in failing to live up to his agreement, and that he was not guilty of misrepresentation. In other words, the trial board agreed with plaintiff that he could not guarantee results in breeding, but that inasmuch as the collie had been purchased with the distinct understanding that if she did not bear young early in December, she was to be returned and the purchase price refunded, plaintiff was bound to live up to those terms and his refusal to do so constituted " misconduct." In this the board was undoubtedly correct. Plaintiff well knew, as an experienced breeder, that he could not guarantee results. With that knowledge, he could not, in the face of Mrs. Brown's letter, accept her money, deliver the dog and then offer something she did not desire in lieu of the conditions she imposed. He could either accept her conditions or refuse to sell and return

her money. By accepting the money thus offered conditionally, he likewise accepted the terms annexed to such offer. Plaintiff's prior offers contained in his first two letters were not accepted by Mrs. Brown. As stated in Clark's New York Law of Contracts, section 35: "And though there have been previous negotiations between the parties consisting of proposals and counter proposals, if one makes a definite offer to the other, this cannot be considered an acceptance of any offer that may have been made by such other, but is merely an offer that itself requires a positive answer. * * * Where a proposition or offer on one side is submitted, whether verbal or written, calling for an answer or acceptance based on such proposal, the acceptance, though in writing, need not recite the terms of the proposal or offer. It is to be read in connection with the offer to which it is a reply, and the whole together constitutes the contract between the parties." Mrs. Brown's letter of October twenty-second contained the terms of her offer. Plaintiff acted thereon by accepting the check inclosed therein and shipping the dog. His letter of acknowledgment (October twenty-fifth) in no wise seeks to vary or dissent from the terms imposed by Mrs. Brown as a condition of such offer. By his acts plaintiff assented to and became bound by such terms, including the refunding of the money paid if the collie failed to fulfill the specific purpose for which Mrs. Brown purchased it. (*Dent* v. *North American S. Co.*, 49 N. Y. 390.) It is, therefore, clear that Mrs. Brown's written offer, plus plaintiff's unqualified acceptance as evidenced by his action thereon, constituted the contract between the parties and that the terms and conditions contained in the offer of October twenty-second were binding upon plaintiff and have not been lived up to by him.

The question that next presents itself is whether a person is guilty of misconduct in connection with the sale of an article, who unqualifiedly agrees to accept the return of the article and to refund the purchase price upon certain conditions, and then refuses to do so when such conditions eventuate. What is meant by "misconduct?" Judge CRANE said in the *Cafferty Case* (*supra*): "Words are to be construed as persons generally understand them and according to their ordinary meaning." One dictionary, which employs simple and informal definitions, gives the meaning of "misconduct" as "improper or wrong behavior." (Winston Simplified Dict.) Funk & Wagnalls Desk Standard Dictionary, which is an abridged edition of a more comprehensive work, defines the term as "improper conduct; bad behavior," while Webster's New International Dictionary (1930) combines and elaborates upon these definitions: "Wrong or improper conduct; bad behavior;

unlawful behavior or conduct; malfeasance." Bouvier, as is to be expected, confines his definition to misconduct in law *e. g.*, misconduct of one intrusted with the administration of justice, such as jurors and arbitrators. (Bouv. Law Dict. [Baldwin Cent. ed.] 808.) Definitions by the courts vary according to the connection in which the word is used. In statutes and decisions relating to divorce, misconduct means only such acts as are grounds for divorce in this State. Used in connection with attorneys, it signifies unethical acts (*Stage* v. *Stevens*, 1 Den. 267), such as the retention of a client's money without legal grounds. (*Bowling Green Savings Bank* v. *Todd.* 52 N. Y. 489, 493.) Misconduct by a trustee imports a breach of trust (*Matter of Gleason*, 17 Misc. 510); by a student, behavior detrimental to the welfare of his college. (*Samson* v. *Trustees of Columbia University*, 101 Misc. 146.)

In the case at bar the matter complained of was used in connection with a breeder of pedigreed dogs. It was stated that plaintiff was guilty of misconduct in connection with one specific sale, and that he was suspended from all privileges of the American Kennel Club until he refunded the purchase price received by him in connection with that sale. What is the " ordinary meaning " of these words " as persons generally understand them? " This question may be decided by the court in this case as one of fact, there being no jury. The readers of the article would naturally understand that plaintiff had become involved in a controversy with Mrs. Brown over the sale by him of a collie, and that the trial board had passed upon the matter and decided that plaintiff should refund the purchase price. His integrity was not questioned, apparently, because his suspension was to last only until he complied with the ruling of the board. It is clear that plaintiff was both morally and legally obligated to refund the money. His refusal so to do certainly constituted " misconduct." His actions and attitude in the matter were not those of a gentleman and would be regarded as unethical in any trade or profession. The fact that he was dealing with a fellow dog fancier aggravates rather than palliates his improper behavior.

Plaintiff seeks to place an interpretation upon the article which would give it a more serious import than that herein ascribed to it. He contends that the only cases of which defendant may, under its by-laws, take cognizance are those involving fraud or wherein fraud is charged. He asserts further that copies of such by-laws have been widely distributed and that those interested in dogs are familiar with this limitation, and hence construed the article complained of as a statement that plaintiff had practiced a fraud upon the purchaser of his collie. The paragraph of the complaint which

in effect alleges such a meaning was stricken out under stipulation of the parties. The by-laws were offered in evidence over defendant's objection to the receipt of any part thereof in support of the innuendo pleaded in the paragraph stricken out. Assuming, but not holding, that the by-laws are before the court for all purposes, it is difficult to ascribe the meaning to the article even when interpreted in the light of the article relating to discipline (Art. XVIII). Section 4 thereof provides that " any association, club, licensed show, individual, person or persons may prefer charges against another for alleged misconduct in connection with dogs, dog shows, or field trials, except in cases of monetary transactions where fraud is not strongly evident." In support of this contention that complaints not entertained wherein monetary transactions lacking strong evidence of fraud were involved, plaintiff offered in evidence various articles from defendant's bulletins in which it was stated that certain complainants were relegated to the civil courts for redress. Inasmuch as these articles do not contain a recital of the facts in the cases referred to, they throw little light upon the class of cases in which jurisdiction was declined. In the Gaston case (Exhibit 35) the complaint was not accepted, " as same is considered a case for the civil courts." Romer v. Ware was dismissed because there was a contract between the parties and the board held that the verbal agreement claimed by complainant would not be binding (Exhibit 34). In the Holden case it was held that there was no proof of misrepresentation as to breed type and that, as it is questionable whether any one can prove whether or not a dog is housebroken, the charges should be dismissed (Exhibit 34). Elder v. Livesey was dismissed for failure of proof of an intent to perpetrate a fraud (Exhibit 34). The complaint of one Palmer was held by the trial board to present a case for the civil courts. In this case, apparently, jurisdiction was entertained and the decision rendered after a survey of the evidence (Exhibit 30). In the Coggins case the executive committee did not refer the charges to a trial board, but ordered that the " same be returned as the case is one for the civil courts " (Exhibit 38). In Wollen v. King the executive committee referred the report of a trial board back to that body, calling attention to the fact that it was a case of debt, no fraud appearing therein (Exhibit 29). In the Snyder and Koci cases, appearing on the same exhibit, the committee advised the complainants that their cases belonged in the civil courts unless proof was submitted that the dogs were not as represented at the time of shipment. None of these cases, so far as may be determined from the meagre facts stated, establish that complaints were not entertained, charges

tried and discipline meted out for misconduct not amounting to actual fraud or misrepresentation. On the other hand, the minutes of the executive committee as contained in these minutes show numerous instances of charges being sustained and individuals denied the privileges of the American Kennel Club, in cases where the nature of the charge is not stated and no specific finding of fraud made. Refusal to reply to letters, in some instances, was deemed to be sufficient misconduct to warrant suspension of club privileges. The refusal of this plaintiff to live up to his plain contractual engagements certainly constitutes misconduct. It is not purely a case of debt nor a simple "monetary transaction." Plaintiff received and held Mrs. Brown's money practically in trust until the determination of the collie's condition. When results, or lack of results (which are not in dispute), required him to return the money, he hedged and evaded, seeking to have her accept something different from that to which he had agreed. While money is involved, it is not a case of debtor and creditor, or of vendor and vendee. In seeking to compel payment of funds received by an attorney or a trustee as such, money is necessarily involved, but the parties seeking such payment are not relegated to an action at law as they usually are when judgment for a sum of money is the relief sought. So in the case at bar it is apparent that the crux of the controversy between plaintiff and Mrs. Brown was not a mere debt or contract obligation owing by the former to the latter, but plaintiff's improper conduct in wrongfully withholding moneys received by him under a specific agreement to return the same. To hold that the article in question imputes fraud to plaintiff requires recourse to extrinsic facts and the use of "fine and shaded distinctions" and of "words pressed out of their ordinary usage." This we may not do to sustain a charge of libel. The article herein means just what the words employed impart — that plaintiff was guilty of improper conduct in refusing to return Mrs. Brown's money received by him under the circumstances shown. The charge made was true. Plaintiff sustained no legal harm by the publication thereof.

The decision of this case might well rest upon the grounds above stated. Counsel, however, have ably briefed other points affecting the result. Plaintiff contends that defendant had no power to try him, and that the charter granted by special act of the Legislature is unconstitutional in so far as it purports to grant such power. It may well be that the defendant has or may in some cases attempt to exercise prerogatives beyond its power and which the Legislature had no authority to delegate to it. If such should be the fact, this case is not a proper one to support the contention. As

presently constituted, the American Kennel Club has no individual members, but is composed of about 143 local clubs and special breed clubs, located or having their headquarters through the country. Each such club elects a delegate by a four-fifths vote of such club. Such delegates meet annually in February, and also at regular meetings in May, September and December of each year. The delegates elect, from their own number, thirty persons who constitute the board of directors of the American Kennel Club, which is its governing board, and from which its officers and executive and other committees are elected or appointed. Members in good standing of the component clubs, which are likewise in good standing, are entitled to all the privileges of the American Kennel Club, many of which, such as registration, pedigrees, etc., are of great value to dog owners. Plaintiff herein was a member of the Collie Club of America, which in turn was a member of the defendant club. Mrs. Brown was a member of the Dixie Collie Club, which does not appear to be affiliated with or a member of defendant. In January, 1927, after plaintiff refused to return her money, Mrs. Brown filed a formal written complaint with defendant, charging plaintiff with misrepresentation in the sale of the collie and refusal to refund the purchase price. Copies of the correspondence between plaintiff and herself were attached. A copy thereof was forwarded to plaintiff by defendant's secretary. Plaintiff wrote to the trial board, to whom it had been referred, giving his version of the transaction, but not in any wise denying the facts in the case, and asking that the trial board give him a fair hearing in the matter. The trial board, upon the correspondence and the facts conceded by plaintiff, directed him to immediately refund the fifty dollars. Plaintiff demurred to so doing in advance of actual trial, and sought a personal hearing. The board thereupon fixed a date for personal appearance and notified plaintiff thereof. The latter then wrote that he was unable to attend in person and again amplified his defense, but by argument rather than by facts controverting the correspondence or Mrs. Brown's sworn statements. The trial board, after receipt of this letter, wrote plaintiff stating that he missed the entire point of the controversy, namely, that by shipping the dog he accepted Mrs. Brown's conditions set forth in her letter inclosing the fifty dollars. It recommended that he return the money and that Mrs. Brown would return the dog. Plaintiff replied that he had been charged with " misrepresentation " and that as none had been shown the case should be relegated to the civil courts. The trial board agreed there was no misrepresentation, but that plaintiff was, under the circumstances, bound to refund the money, and so directed.

Plaintiff flatly refused to abide by the decision, and so notified defendant, which in turn stated that unless the money was repaid in thirty days his suspension would be recommended. After some unseemly quibbling, plaintiff sought a review by the executive board and took the appeal provided by the by-laws. A hearing was had thereon at which plaintiff was afforded an opportunity to be heard, and the action of the trial board was upheld. Plaintiff thus submitted his cause to the tribunal set up for such purposes by defendant and after a full hearing was declared at fault. He is in no position to challenge the jurisdiction of that tribunal. Whether the board has the right to try cases against the objection of one complained of is not presented here. The doctrine that a statute should not be held unconstitutional by the court of original jurisdiction, except in a clear case, has received judicial recognition, at least as an advisory principle. (*Economic Power Co.* v. *City of Buffalo*, 59 Misc. 571, and cases cited, p. 584.) The courts do not consider the constitutionality of a statute unless the question is so involved in the given case as to be essential to the determination of that case. (*People ex rel. Rayland Realty Co.* v. *Fagan*, 194 App. Div. 185, 187; affd., 230 N. Y. 653.) Plaintiff was clearly guilty of misconduct in his transaction with Mrs. Brown. The article complained of by him charges him with such misconduct and goes no further. It being true defendant had the right to publish it. Owing to the effect suspension had, not only upon a dog owner, but upon his dogs and their progeny, it was a matter of no little importance to dog fanciers in general; hence the publication was at least qualifiedly privileged. The treatment accorded plaintiff shows a total lack of malice which would otherwise destroy such privilege. Plaintiff has shown no legal damage, and a verdict for defendant must be directed.