THE VILLAGE OF HERKIMER, Plaintiff, *v.* ERASTUS D. POTTER, Defendant.

Supreme Court, Onondaga Special Term, November 26, 1924.

Public health — ordinances — village ordinance passed pursuant to Public Health Law, § 21, which after prohibiting sale of milk or cream unless bottled and unless coming from tuberculin tested herds, forbade sale without permit, is valid and not in conflict with Sanitary Code — provision for fine of $100 for each offense valid — milk dealer may be enjoined by court of equity from violating said ordinance by selling, unbottled, milk from cows not tested — remedy at law inadequate — motion to vacate temporary injunction denied.

An ordinance duly adopted by the board of health of the village of Herkimer pursuant to section 21 of the Public Health Law, which forbids any person or corporation to sell, peddle or offer for retail sale any milk or cream in the village without first obtaining a permit from the local health officer, designates the various grades of milk and cream which may be sold in bottles only, directs that certified and raw milk of all grades shall come from cows which have been tested at least once during the previous year with tuberculin, and imposes penalties for a violation of the ordinance, is valid and enforcible and is not inconsistent with the provision of the Sanitary Code.

The provision in said ordinance prescribing a penalty for its violation of $100 for each offense, while in apparent conflict with regulation 2 of chapter 1 of the Sanitary Code, is valid under section 21 of the Public Health Law.

A milk dealer may be enjoined by a court of equity from violating said ordinance, by selling, unbottled, milk coming from cows not subjected to tuberculin test, and a temporary injunction granted in such an action will not be vacated. The remedy at law under such circumstances is inadequate.

MOTION by defendant to vacate injunction *pendente lite.*

*David E. Snyder,* for the plaintiff.

*James H. Greene,* for the defendant.

EDGCOMB, J.:

This action is brought to restrain the defendant from selling, peddling or delivering milk or cream in the village of Herkimer, because of his violation of various regulations prescribed by an ordinance governing the sale of milk and cream in the village, and to recover certain penalties therein mentioned, which ordinance was duly adopted by the board of health of the village of Herkimer, and went into effect October 1, 1924. An injunction *pendente lite* was granted, which the defendant now moves to vacate.

The ordinance forbids any person or corporation to sell, peddle or offer for sale at retail any milk or cream ·in the village without first obtaining a permit from the local health officer; it designates the various grades of milk and cream which may be sold and

Supreme Court, November, 1924.      [Vol. 124

specifies the requirements of each grade; it directs all milk to be bottled, and that certified and raw milk of all grades shall come from cows which have been tested at least once during the previous year with tuberculin, and that if any animal reacts thereto, it must be promptly excluded from the herd. Penalties are prescribed for a violation of the law. Other regulations are ordained, which are not important here.

When this injunction was granted the defendant was not only selling milk regularly in the village without a permit, but was peddling milk which came from herds which had not been subjected to the tuberculin test, and much of which was not bottled. Notwithstanding he insists that the plaintiff is not entitled to injunctive relief for two reasons: (1) That the ordinance itself is invalid; (2) that plaintiff has an adequate remedy at law, and an injunction will not or at least should not lie under the circumstances disclosed.

The village health board had authority to pass any proper sanitary ordinance. That the Legislature may lawfully confer such right on local boards of health, and that all ordinances which have been properly adopted and posted and which are designed and appropriate to protect the public health, comfort and safety have the force of law within the jurisdiction of the board adopting the same, there can be no doubt. (*People ex rel. Lieberman* v. *Vandecarr*, 175 N. Y. 440, 444; affd., 199 U. S. 552; *Polinsky* v. *People*, 73 N. Y. 65; *People ex rel. Schulz* v. *Hamilton*, 188 App. Div. 783; *Mannix* v. *Frost*, 100 Misc. 36, 45; affd., 181 App. Div. 961; *People ex rel. Ogden* v. *McGowan*, 118 Misc. 828; affd., 200 App. Div. 836.)

The Public Health Law (§ 21) directs local boards of health to make and publish such orders and regulations, not inconsistent with the provisions of the Sanitary Code, as they may deem necessary and proper for the preservation of life and health, and to prescribe and impose penalties for the violation or failure to comply with any such orders or regulations.

The local law here under consideration is in no way inconsistent with the provisions of the Sanitary Code. It is calculated to prevent disease and protect the health of the inhabitants of Herkimer. With the advance of science within the past few years and the research of students in their laboratories and studies we have come to better understand and know the causes of disease, and with that knowledge the medical profession have been able to teach the public how to prevent sickness by taking proper precautions to avoid the danger of contracting the same. It is but a short time ago that we learned that an impure milk supply was the

breeder of many serious maladies. Bacteria, many of which are disease germs, are closely associated with dirt, and thrive in milk. It is common knowledge of all who are familiar with farm life that, even with the utmost precaution, a stable is a place where dirt collects and flies abound. It is almost impossible to produce milk without contamination. A pure milk supply vitally affects the public health, and a proper regulation of its sale is a matter of public concern. Milk is the chief article of food of infants, and I know of nothing which is of more vital importance to the life and health of young children than to protect the milk supply.

It will be noted that the Legislature has given to the various local boards of health of the State the broadest possible powers to enact sanitary regulations, the only limitation being that the requirements must be consistent with the provisions of the Sanitary Code. Otherwise any regulation which the local board of health may deem necessary and proper for the preservation of life and health may be enacted and put into execution. (Public Health Law, § 21.)

Any provision which tends to safeguard public health and life and to serve the public comfort and safety, and is not a mere subterfuge to restrain a person in the free pursuit of a lawful occupation, is within the jurisdiction and discretion of the body authorized to enact the ordinance, and the exercise of that discretion is not a subject of judicial review. (*People ex rel. Nechamcus* v. *Warden*, 144 N. Y. 529.)

In this case there is not the shadow of a doubt as to the nature of these regulations. They are wise measures tending to give to the residents of a populous village a safe and pure milk supply, and to minimize the dangers which come to the human race through that source if it be impure and unclean. It cannot be argued for a moment that these various regulations were enacted for the purpose of preventing the defendant or any other person from carrying on a lawful business, or that they are unreasonable, capricious or arbitrary, much less that in enacting them there was any abuse of discretion on the part of the village board of health.

The reasonableness of a rule requiring all persons or corporations peddling milk in a municipality to first procure a permit from the local health officer has never been questioned. The State forbids the carrying on of many lines of business without a permit from the proper authority. To say that it is an unreasonable provision to require persons dealing in a commodity so vitally affecting public health, especially that of babies and children, to first obtain a license so to do, is to assert a proposition which cannot be upheld for a minute.

In the light of the present day knowledge of the probabilities of contamination of milk when exposed to the dust and dirt and germs of the streets and public places of a populous city or village, no one could be heard to say that the regulation prohibiting the selling of loose or dipped milk in Herkimer was unreasonable, much less an abuse of discretion. A similar regulation has been upheld. (*People* v. *Frudenberg,* 209 N. Y. 218; *People ex rel. Shelter* v. *Owen,* 66 Misc. 24.)

The defendant urges that the ordinance has created a grade of milk not provided for by the Sanitary Code. That collection of rules restricts the various grades of milk which may be sold and fixes the minimum requirements of each grade. The ordinance in question does likewise, but does not permit the sale of grade C milk, raw or pasteurized. Regulation 14 of chapter 3 of the Sanitary Code expressly gives to the health officer of a municipality the right, in his discretion, to prohibit the sale of any grade of milk specified in the Code.

The regulations of the various grades of milk and cream permitted to be sold by the ordinance are practically identical with those of the same grade as specified by the Sanitary Code, with the exception of grade B, raw. The local law requires all such milk to be produced from cows which have had the tuberculin test, which is not directed by the Sanitary Code. Defendant seriously objects to this tuberculin test. In fact this mandate seems to be the chief bone of contention here.

This requirement does not make a new grade of milk, one not specified in the Sanitary Code, as claimed by defendant. The number of bacteria per cubic centimeter and the scoring of the farms on which the milk is produced, and the time and manner in which it shall be delivered is identical in both requirements. The provision for the tuberculin test has simply increased the stringency of the Code regulations of one particular grade of milk. This the local health authorities were authorized to do. (Sanitary Code, chap. 3, reg. 14.) The Sanitary Code fixes the minimum, but not the maximum regulations of the various grades of milk. (Chap. 3, reg. 13.)

Defendant attacks the reasonableness of this provision. He says, and has produced the affidavits of four physicians in the village of Herkimer who say that it has never been definitely established as a scientific fact that bovine tuberculosis is transmitted through milk from the animal to human beings. That many prominent physicians and scientists entertain an opposite opinion is common knowledge and is also shown by the affidavits presented by the plaintiff. It may be that there is a difference of opinion among

the medical fraternity on this question. If there is not, it would be the first question upon which the fraternity were in entire accord. In recent years eminent physicians have given their whole time and attention to the study of this dread disease, its causes and treatment. There are many able and competent physicians who believe, and many eminent writers who assert, that while there is a difference in the character of bovine and human bacilli, the bovine organism is capable of producing tuberculosis in man and that, inasmuch as bovine bacilli are distributed by means of milk, the danger of human beings contracting the disease from this source is not only real but serious. Children are especially susceptible to tuberculosis, not only of the lungs but of the bones, joints and glands. Eminent authority tells us that bovine tubercle bacillus conveyed in milk is the causative factor of such condition in many cases. It is idle to say that such precaution is useless. In the light of the testimony of prominent physicians who have given this subject years of study, and of the findings of various commissions in this and other lands, having this matter under investigation, no court would be justified in ignoring such a provision, which finds such strong support in the experience of these learned men, and in holding it to be useless, unnecessary and unreasonable, much less in saying that the adoption of such a regulation by a board charged with the duty of looking after the health, life and comfort of the people within its jurisdiction was an abuse of the discretion given it by the Legislature. If this requirement is so useless and unnecessary why should it be exacted of certified and grade A raw milk? The Sanitary Code, adopted by the Public Health Council of the State, recognizes the wisdom of such a requirement in those grades of milk. Defendant does not complain of this demand as applied to any grade other than B raw. If his contention is true, and bovine bacilli cannot be carried in milk and cause tuberculosis in man, there is no need of this precaution in certified and grade A raw milk.

Defendant does not produce but brokers the milk which he sells. He complains that with two exceptions he has been unable to find a farmer who has milk for sale which comes from tuberculin tested cows, and objects to buying his milk from one of these sources because of the price, and from the other because of the distance which it would have to be transported. A slight inconvenience to the dealer or an increase in price of the commodity sold does not make this ordinance unreasonable. Defendant states in his affidavit that large quantities of milk are produced in the county of Herkimer, and that the village is practically surrounded by dairy farms. This fact would lead one to believe that defendant could procure the required milk without much trouble, if he really desired so

to do. If the farmer knows that he cannot sell his milk without such test, he will not hesitate to comply with the requirement. It is an easy matter to have a herd tested. There is no substance to the suggestion that this regulation makes it impossible or extremely difficult to obtain the specified milk.

Defendant criticises the ordinance because it prescribes a penalty for its violation of $100 for each offense, while the Sanitary Code (Chap. 1, reg. 2) declares that a non-compliance with its provisions constitutes a misdemeanor punishable by a fine of not more than fifty dollars or by imprisonment for not more than six months, or both. The force of this objection falls in light of the provision of the Public Health Law (§ 21) which gives to a local health board the power to prescribe and impose penalties for the violation of or failure to comply with any of its orders or regulations, not exceeding one hundred dollars for each violation, to be sued for and recovered by and in the name and for the benefit of the municipality.

It is apparent, therefore, that the ordinance in question is valid, and must stand.

This brings us to defendant's second objection, that the plaintiff has mistaken its remedy and is not entitled to injunctive relief.

Defendant urges that the plaintiff can sue for the penalty prescribed by the ordinance, and, therefore, has an adequate remedy at law, and that this is but an effort to use a court of equity to enforce a local law. He insists that equity will not interfere by injunction to enforce the penal laws of the State or local ordinances, unless the act sought to be restrained is in itself a nuisance. Section 21. of the Public Health Law expressly gives to local boards of health authority to maintain actions in any court of competent jurisdiction to restrain by injunction violations of its orders and regulations.

It is true that the village could sue the defendant to recover the penalties prescribed by the ordinance, but can any one argue for a moment that the penalty would be an adequate remedy for the violation of the ordinance if, while the action was being determined, defendant continued to sell his milk in violation of the requirements, and, because of such non-observance, a single child within the village of Herkimer contracted tuberculosis by reason of impure milk sold to its parents by defendant? The mere asking of the question answers it.

Defendant complains that he has been completely put out of business by this injunction. This would not have been the case had he complied with the requirements of the ordinance, and the moment that he shows that he has or will do so the injunction will be dissolved.

There is no invasion of one's constitutional rights when the sole object and general tendency of legislation is to promote public health and life. The right of a person to liberty or property is not an absolute one, but must yield when the health or welfare of the public demands. (*Matter of Viemeister*, 179 N. Y. 235; *People* v. *Lochner*, 177 id. 145.)

Defendant says that he will agree to desist from selling loose milk and will apply for a license if this injunction is dissolved. He argues that it is the duty of the health officer to issue a permit to him as a matter of course upon his filing an application therefor, and that the only conditions which can be imposed to its issuance are those outlined in the Sanitary Code; he says that if he violates any regulations of the local health board after the permit has been issued, it can be revoked for cause, after a hearing on due notice to him. He has not agreed to sell only such raw milk as comes from cows which have been subjected to the tuberculin test. In fact, he insists that such requirement is illegal and cannot be enforced. Under these circumstances, I do not think that this restraining order should be lifted and defendant be given a chance to continue the sale of milk prohibited by the health authorities, while such right is being determined on a protracted hearing before the health board on a proceeding to revoke defendant's license. The very harm sought to be avoided by these precautionary measures would thus be permitted to be continued. Such a procedure does not appeal to my discretion. The village health officer has a right to impose as a condition precedent for the issuing of this permit a provision requiring all grade B raw milk to come from cows which have not reacted to the tuberculin test. Regulation 1 of chapter 3 of the Sanitary Code provides that the permit to peddle milk shall be issued subject to such conditions as may be imposed by the Code or the local health officer. This does not mean, as urged by the defendant, that the permit must be issued without the imposition of any conditions except those stated in the Sanitary Code. Any reasonable condition may be imposed by the local health board as a condition precedent to the issuing of the permit. (*People ex rel. Shelter* v. *Owen*, 66 Misc. 24.)

I think that the ordinance in question is valid and reasonable, and that a violation thereof can be restrained by a court of equity. While it is always more satisfactory to determine a party's right to injunctive relief after a trial and after the issues have been settled rather than on the pleadings and on affidavits, nevertheless the plaintiff has made out a *prima facie* case entitling it to the relief asked. I believe that the welfare and safety of the public should have preference over any inconvenience to defendant or loss of his

property rights. More and more are property rights giving way to human rights. The interests of the public are paramount. The inhabitants of Herkimer are entitled to the protection which has been given to its milk supply, and which is so common in other municipalities. I think that the court should assist in making that protection effective.

Motion denied, with ten dollars costs to abide event.