THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. CHRIS TEUSCHER, Defendant.

Supreme Court, Oneida County, February 21, 1927.

Constitutional law — police power — public health — Farms and Markets Law, § 76, permitting Commissioner of Farms and Markets to quarantine farm harboring untested herd of bovine animals is constitutional — defendant refused to subject his herd to tuberculin test and Commissioner issued quarantine order forbidding removal of cattle or their products from premises — defendant sold and delivered milk from herd contrary to quarantine order — restriction will cease when defendant subjects herd to test — defendant liable for penalty imposed pursuant to Farms and Markets Law, § 40 — judgment should contain provision for permanent injunction under Farms and Markets Law, § 38.

Section 76 of the Farms and Markets Law, which permits the Commissioner of Farms and Markets, in the event ninety per cent of the herds of bovine animals in any town have been subjected to the tuberculin test for the purpose of ridding such herds of whatever animals might be afflicted with bovine tuberculosis, to quarantine the premises harboring, in any such town, a herd which the owner thereof refuses or neglects to have tuberculin tested, is constitutional as a valid exercise of the police power in the aid of good health, and is not in conflict with the spirit of the State or Federal Constitutions. Moreover, such a quarantine order forbidding the removal of animals or their products from quarantined premises has all the force of law.

Accordingly, the defendant, who operated a farm in a town in which at least ninety per cent of the herds of cattle had been subjected to the tuberculin test for bovine tuberculosis, in accordance with the provisions of section 76 of the Farms and Markets Law, is liable pursuant to section 40 of said law for the penalties imposed for the conceded violations of a quarantine order issued by the Commissioner of Farms and Markets on defendant's refusal or neglect to have his herd tuberculin tested, where the evidence shows that the defendant, on divers occasions, transported and sold milk conceded to be a product of his untested herd of cattle in direct violation of the quarantine order. Furthermore, the judgment to be entered herein must contain a provision, pursuant to section 38 of the Farms and Markets Law, restraining and enjoining the defendant from any further violation of section 76 of the Farms and Markets Law, and restraining and enjoining him from removing or causing to be removed from his quarantined premises any products of his untested bovine animals.

The quarantine order does not deprive the defendant of the right to transport to market for sale the milk of his untested herd, since he is only deprived of transporting the milk until such time as he complies with the statute enacted to protect the health of the public which he serves.

ACTION for injunction under section 38 of the Farms and Markets Law of the State of New York, and to recover penalty for the violation of section 76 of said law.

*Albert Ottinger, Attorney-General [Maurice J. Kaman, Deputy Attorney-General, and George L. Flanders* of counsel], for the plaintiff.

*Pratt & Fowler,* for the defendant.

WILLIAM F. DOWLING, J.   The defendant conducts a small farm in the town of Rome, Oneida county, N. Y.   During the year 1925, and since that time, he has kept and maintained a herd of twelve cattle on said farm, the income from which constitutes practically all of the revenue derived from said farm.

During the year 1925, and prior to the tenth of November, various owners of herds of cattle of the bovine type, kept for dairy or breeding purposes within the township of Rome, Oneida county, N. Y., applied to the Commissioner of Farms and Markets of the State of New York for examination of their respective herds by the tuberculin test, subject to the regulations prescribed under section 79 of article 5 of the said Farms and Markets Law of 1922 (as amd. by Laws of 1922, chap. 255).   Pursuant to such request, prior to November 10, 1925, it is conceded that at least ninety (90) per cent of the herds of cattle, or ninety (90) per cent of the total number of cattle in the said township of Rome, had been duly subjected to the tuberculin test, for the purpose of ridding such herds of whatever animals might be afflicted with the disease known as " bovine tuberculosis."   The evidence disclosed that out of two hundred and sixty-nine herds in said township, all but sixteen herds had been so tested, the defendant's said herd being one of the sixteen.   The test disclosed the fact that every herd so tested contained one or more cows suffering from tuberculosis.   Notwithstanding the prevalence of said disease, the defendant refused to have or permit his herd to be tested.   He did, however, have the herd examined by a veterinarian, who pronounced it to be, in so far as could be determined by a superficial examination, in a healthy condition.   Upon his refusal to submit his herd to the tuberculin test, the Commissioner, on the 10th of November, 1925, issued the following quarantine order against the defendant's herd and premises:

" STATE OF NEW YORK — DEPARTMENT OF FARMS AND MARKETS

" BERNE A. PYRKE, Commissioner

" QUARANTINE ORDER   *   *   *   UNTESTED HERDS

" To Mr. CHRIS TEUSCHER,
        " R. D. 2, Rome, N. Y.:
" WHEREAS, at least ninety per centum of the herds of cattle in the Township of Rome, County of Oneida, State of New York, have been duly subjected to the tuberculin test for the purpose of ridding such herds of the disease known as tuberculosis; and
" WHEREAS, you are the owner of a herd of cattle situate upon

a farm or premises within the above-named township, to wit: situate in the township of Rome, county of Oneida, and

" Whereas, you have refused or neglected to have said herd tuberculin tested;

" *Now, therefore,* I, Berne A. Pyrke, as Commissioner of Farms and Markets of the State of New York, by virtue of the power and authority conferred upon me by the provisions of Section 76 of the Farms and Markets Law, do hereby ORDER

" 1. That the premises or farm on which said untested herd is harbored or kept be, and the same hereby is, placed in quarantine.

" 2. That no Bovine animal shall be removed from or brought to said premises.

" 3. That no products of the Bovine animals on said premises shall be removed from said premises.

" This order shall take effect immediately and continue in full force until otherwise ordered.

" Signed and sealed this 10th day of November, 1925.

" [seal]                               BERNE A. PYRKE,
                                              " *Commissioner*
                          " by C. P. Norgord,
                                              " *Ass't. Commissioner.*"

In substance, said quarantine order provides that no bovine animal should be removed from or brought to said premises and no products of bovine animals on said premises should be removed therefrom while the herd remains untested.

The defendant apparently conformed to the requirements of the quarantine until the 22d of July, 1926, when, in violation of the provisions thereof, he transported from said farm, to a milk station at Marcy, Oneida county, N. Y., a quantity of milk conceded to be a product of his said herd of cattle, which said milk he delivered for sale at said station. Again, on the 15th of September, 1926, the defendant violated the provisions and terms of said quarantine by transporting and delivering for sale at a milk station at Oriskany, Oneida county, N. Y., a quantity of milk, a product of his said herd. At the time of the trial he was still delivering his milk around Oriskany station, contrary to the order of quarantine. The defendant concedes these two violations of the quarantine order on his part. As matter of fact, the defendant concedes all the acts charged against him in the complaint to be true, denying only that the same are illegal or in violation of law. Section 76 of the Farms and Markets Law (as amd. by Laws of 1924, chap. 267), in force in the year 1925, is as follows: " Whenever ninety per centum of the herds of cattle in any town have been subjected

to the tuberculin test for the purpose of ridding such herds of the disease known as tuberculosis, and the owner of any untested herd in such town refuses or neglects to have his herd tuberculin tested, then the commissioner may order the premises or farm on which such untested herd is harbored to be put in quarantine, so that no domestic animal shall be removed from or brought to the premises quarantined, and so that no products of the domestic animals on the premises so quarantined shall be removed from the said premises.''

The defendant contends that the complaint should be dismissed for the following reasons and he so moved at the trial.

'' 1. On the ground that the quarantine in effect makes tuberculin testing compulsory, whereas the law, section 79 of Farms and Markets Law, makes it optional

'' 2. On the ground that the quarantine is unauthorized under section 76 of the Farms and Markets Law, as amended, it not having been made to ' prevent the dissemination of a dangerous communicable disease,' and there being no claim that the defendant's cattle were diseased.

'' 3. On the ground that the quarantine order deprives the defendant of the right to transport to the market for sale, untested milk within the territorial limits of the town of Rome, where such right is possessed and enjoyed by other dairymen of the same class without restriction.

'' 4. On the ground that a judgment against the defendant would subject him to a penalty without violation of law.

'' 5. On the ground that the quarantine order (assuming it is authorized by section 76 of the Farms and Markets Law) is unconstitutional and void, and outside of the police powers of the state, its purpose not being to promote the public health, morals or safety.

'' 6. On the ground that the quarantine order deprives the defendant of liberty and property without due process of law.''

The case was brought on for trial before a jury. At the close of the evidence the defense moved for a nonsuit and dismissal of the complaint, and by consent of the parties, decision on the motion was reserved. Both parties then moved for a direction of verdict. The parties then waived trial by a jury, consenting that the court decide the facts as well as the law, and the jury was thereupon dismissed. Hence, the matter is before me, both on questions of law and of fact. The only fact in issue is as to the amount of the penalty. The statute fixes the maximum penalty at $200. Section 40 of the Farms and Markets Law provides

7

that " Every person  *  *  *  shall obey every order made as provided in this chapter, so long as such order shall be in force." Also that " A person  *  *  *  who shall fail by himself  *  *  * to obey any order of the Commissioner, shall be subject to a penalty not exceeding the sum of $200 for each and every offense."

Section 41 of the Farms and Markets Law (as amd. by Laws of 1926, chap. 55) provides: " Except as otherwise provided by the penal law, a person who by himself or another violates any of the provisions of this chapter or of any other law the enforcement of which is within the jurisdiction of the department, or of any lawful rule of the department is guilty of a misdemeanor,  *  *  *." From the foregoing, it is clear that the statute not only provides for a penalty for a violation of an order of the Commissioner, but also makes the disobedience of said order a misdemeanor. It necessarily follows that the penalty is imposed for a violation of the law of the State of New York. I think the quarantine order of the Commissioner has all the force of law. (*Village of Herkimer* v. *Potter,* 124 Misc. 57, 58; *People ex rel. Ogden* v. *McGowan,* 118 id. 828, 830.)

Learned counsel for the defendant has urged with great force and skill the unconstitutionality of the Farms and Markets Law, in so far as it relates to the matters at issue here. That act was designed to give to the People of the State of New York an abundant supply of pure and wholesome milk, etc., and to protect the health of the inhabitants of said State.

Article 1, section 3, of the Farms and Markets Law of 1922 provides as follows:

" § 3. Matters of public interest. The production, manufacturing, marketing, storing and distribution of food, and of all the instrumentalities used in the production thereof, including fertilizers, feeding stuffs, materials, apparatus and machinery used or needed in connection therewith, are matters of public interest and proper subjects for investigation, encouragement, development and regulation by the state to secure an abundant supply of pure and wholesome food, to protect the health of the inhabitants of the state, to secure the exchange of such food and instrumentalities upon a fair basis and at market prices uncontrolled by speculation, to prevent frauds in the traffic therein, and so far as may be to eliminate waste and loss in distribution thereof."

The purpose of this act was recently approved by the Court of Appeals of the State of New York in *Abounader* v. *Strohmeyer & Arpe Co.* (243 N. Y. 458) At page 464 the court said: " As one of its first provisions the Farms and Markets Law, of which the provisions which we have quoted are part, declares that ' The

production, manufacturing, marketing, storing and distribution of food, and of all the instrumentalities used in the production thereof * * * are matters of public interest and proper subjects for investigation, encouragement, development and regulation by the State to secure an abundant supply of pure and wholesome food, to protect the health of the inhabitants of the State. * * *' "

The statute is presumed to be constitutional, and the burden is upon the person opposing it to show beyond a reasonable doubt that it is unconstitutional. (*People ex rel. Hatch* v. *Reardon,* 110 App. Div. 821, 829; affd., 184 N. Y. 431; 204 U. S. 152.)

Upon the trial, great latitude was given to the defendant in the admission of evidence to the end that all of his contentions might be supported by evidence upon the record. Counsel urges with great force the unwisdom of enacting such a law, and the injustice which its administration entails upon persons in the situation now confronting the defendant. A judge, however, may neither substitute his own judgment for that of the Legislature, as to the wisdom or justice of a particular law, nor be influenced by those of like considerations in deciding its constitutionality. The sole inquiry is: " Has the Legislature exceeded its jurisdiction and enacted a measure in contravention of the State or National Constitution."

The court should always assume that the Legislature intended to protect the public health and promote the public welfare and safety in construing its enactment. (*People ex rel. Nechamcus* v. *Warden,* 144 N. Y. 529, 536.)

Nor should a statute be held unconstitutional by a court of original jurisdiction, except in a clear case. (*Economic Power & C. Co.* v. *City of Buffalo,* 59 Misc. 571, 584; affd., 128 App. Div. 883; revd., on other grounds, 195 N. Y. 286.)

In the *Hatch Case* (*supra*) the court said (at p. 829): "Judges, therefore, may neither substitute their own judgment for that of the Legislature as to the wishes or justice of a particular law, nor be influenced by those or like considerations in deciding its constitutionality. The sole inquiry is, therefore, has the Legislature exceeded its jurisdiction and enacted a tax measure in contravention of the State or National Constitution? The presumption is in favor of the validity of the statute, and we may not declare it void unless beyond a reasonable doubt it has been enacted in violation of a controlling constitutional provision."

In *Durand* v. *Dyson* (271 Ill. 382, 389) it was said: " Cattle afflicted with a dangerous and contagious disease are public nuisances as defined by the common law, and under the common law such a

nuisance could not be legalized because it invaded the peace and safety of the people. * * * Prevention of the spreading of dangerous diseases among cattle is now universally recognized in this country as within the domain of the police power, as it is so essential to the public safety and health." And further, " It must be presumed by this court that the legislature has carefully investigated and has properly determined that the interests of the public require legislation that will insure the public safety and the public health against threatened danger from diseased animals. The determination of that fact is the province of the legislature and not of the courts. It is also the province of the legislature and not of the courts to determine what measures are necessary for the protection of such interests."

The proposition is equally fundamental that the State, in the exercise of its police power, may protect the general welfare of the community, notwithstanding the rights of private property may be thereby curtailed. (*People ex rel. Durham R. Corp.* v. *LaFetra,* 230 N. Y. 429, 442.)

The police power of the State is incapable of exact definition. It must always be elastic and comprehensive enough to adequately safeguard and protect the public health and welfare.

In the *LaFetra Case* (*supra*) the court said (at pp. 442, 443): " The proposition is equally fundamental that the State may establish regulations reasonably necessary to secure the general welfare of the community by the exercise of its police power although the rights of private property are thereby curtailed and freedom of contract is abridged. (*Chicago, B. & Q. Ry. Co.* v. *Drainage Comrs.,* 200 U. S. 561; *Rast* v. *Van Deman,* 240 U. S. 342; *American Coal Min. Co.* v. *Special Coal & Food Comm.,* 268 Fed. Rep. 563.) The legislative or police power is a dynamic agency, vague and undefined in its scope, which takes private property or limits its use when great public needs require, uncontrolled by the constitutional requirement of due process. Either the rights of property and contract must when necessary yield to the publ c conven.ence, advantage and welfare, or it must be found that the State has surrendered one of the attributes of sovereignty for which governments are founded and made itself powerless to secure to its citizens the blessings of freedom and to promote the general welfare."

Freund on Police Power (pp. 26, 27) says:

" § 31. Regulations applied to innocuous conditions.— The positive character of police regulations is shown in many other things besides standards and limitations. Wherever the character of a measure is precautionary, it operates on persons, things or conditions no matter whether in every individual case the pre-

caution is necessary or not. The principle is that where a measure could not be enforced without uniformity, the individual interest must yield to this requirement. Thus in case of vaccination it would not be possible to inquire or discover whether each child vaccinated was predisposed toward smallpox. Where a board of health required that certain articles should be disinfected at the expense of the owner, it was not competent for an owner to show that his goods did not require disinfection. The danger being general a measure would be defeated in its beneficial effect, if the question of its necessity could be raised in each particular case."

In *Matter of Viemeister* (179 N. Y. 235) the Court of Appeals held that a vaccination statute prohibiting children from attending school unless vaccinated was constitutional. The court said (at p. 238): " When the sole object and general tendency of legislation is to promote the public health, there is no invasion of the Constitution, even if the enforcement of the law interferes to some extent with liberty or property."

In the *Viemeister* case, as in the instant case, it was argued that compulsory vaccination was valueless, and even harmful, but the court refused to be moved by this contention, saying (at pp. 241, 242): " The fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by every one. The possibility that the belief may be wrong and that science may yet show it to be wrong is not conclusive, for the Legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases. In a free country where the government is by the people through their chosen representatives, practical legislation admits of no other standard of action, for what the people believe is for the common welfare must be accepted as tending to promote the common welfare, whether it does in fact or not. Any other basis would conflict with the spirit of the Constitution and would sanction measures opposed to a republican form of government.

" While we do not decide and cannot decide that vaccination is a preventive of smallpox, we take judicial notice of the fact that this is the common belief of the people of the State, and with this fact as a foundation, we hold that the statute in question is a health law, enacted in a reasonable and proper exercise of the police power. It operates impartially upon all children in the public schools and is designed not only for their protection but for the protection of all the people of the State. The relator's son is excluded from school only until he complies with the law passed to protect the health of all, himself and his family included. No

right conferred or secured by the Constitution was violated by that law or by the action of the school authorities based thereon."

It is generally recognized that bovine tuberculosis may be communicated to human beings by the use of milk from cows affected by the disease, and it was so held by the Supreme Court of the State of Mississippi in *Hawkins* v. *Hoye* (108 Miss. 282). The court said: "Statutes establishing boards of health for the purpose of advancing the public health by investing such boards with the power to adopt ordinances, rules, and regulations necessary to secure such objects are not unconstitutional as being a delegation of legislative power. * * * The regulation is within the police power of the State. It is in aid of good health, and consequently tends to the welfare and safety of the people. Tuberculosis is a disease dangerous and destructive to human life. It is recognized that tuberculosis may be communicated to human beings by the use of milk from cows infected with the disease. Therefore it was proper for the board of health, the body empowered and enjoined by the statute to supervise the health interest of the people and to prevent the spread of epidemic diseases, to make this regulation."

Even in our own State, the Governor in his annual message (Jan. 5, 1927, p. 28) to the 1927 Legislature, in commenting upon the work performed by the Department of Agriculture and of Farms and Markets in the eradication of bovine tuberculosis, said: "Forty-seven counties are actively co-operating with the State and Federal governments in this work. These counties have local committees co-operating, giving time and energy to the prosecution of this project. The counties of the State have during the present year appropriated $206,000, which has made possible the employment of 72 county and assistant county veterinarians. The State furnishes 24 veterinarians and the Federal government 13, so that we have a total full time service of 109. I urge upon you that there be no curtailment of this work but that its encouraging results be carried through to a one hundred per cent eradication of this menace to the public health."

This statute does not conflict with the Federal Constitution. (*Jacobson* v. *Massachusetts*, 197 U. S. 11; *Compagnie Francaise* v. *Louisiana State Board of Health*, 186 id. 380.)

In the *Compagnie Francaise Case* (*supra*) the court said (at p. 393): "And the views which we have previously expressed suffice to dispose of the contention that the subjecting of the vessel of the plaintiff in error to the restriction imposed by the quarantine and health law of the State operated to deprive the defendant in error of its property without due process of law, in violation of the Fourteenth Amendment. It having been ascertained that the regulation was

lawfully adopted and enforced the contention demonstrates its own unsoundness, since in the last analysis it reduces itself to the proposition that the effect of the Fourteenth Amendment was to strip the government, whether State or National, of all power to enact regulations protecting the health and safety of the people, or, what is equivalent thereto, necessarily amounts to saying that such laws when lawfully enacted cannot be enforced against person or property without violating the Constitution. In other words, that the lawful powers of government which the Constitution has conferred may not be exerted without bringing about a violation of the Constitution."

One of the most recent utterances on the constitutionality of a statute, very similar to the one in question here, is to be found in *Fevold* v. *Board of Supervisors* (210 N. W. [Iowa] 139). In that case the court had under consideration a statute providing for compulsory testing by tuberculin of breeding cattle whenever seventy-five per cent of the owners in any county signed agreements, and further providing for a county area method of testing and eradication. The court held that the Legislature might require testing and provide reasonable measures for carrying the same out, saying (at p. 144): "It is clear from the foregoing cases that the Legislature had power to determine that the interests of the public health required the testing of cattle for tuberculosis, and to determine, in the exercise of a reasonable discretion, what measures should be taken to that end, and whether, in the creation of the accredited area, within which such testing should be compulsory, notice and an opportunity to be heard should be given. The objection that the accredited area within which compulsory testing is required is limited to the county, and that therefore the law is not of uniform operation, is without merit. *Northwestern Laundry* v. *City of Des Moines*, 239 U. S. 486, 36 S. Ct. 206, 60 L. Ed. 396; *City of Des Moines* v. *Manhattan Oil Co.*, 193 Iowa, 1096."

The defendant contends that the quarantine order deprives him of the right to transport to market for sale the milk of his untested herd within the territorial limits of the town of Rome in the face of the fact that such right is possessed and enjoyed by other herd owners of the town of Rome, and especially since his milk is contained, while being transported, in receptacles from which contagion cannot spread, and that this is a violation of his constitutional rights, depriving him of liberty of action and of enjoyment of his property without due process of law. This claim is untenable for the reason that it is the defendant himself, and not the authorities in charge of enforcing the quarantine, who is responsible for the restriction placed upon him in transporting the

milk of his herd to market. He merely has to have his herd tested, in order to enjoy the same rights as other dairymen in the town of Rome. He is only deprived of transporting the milk of his herd to market until he complies with the law passed to protect the health of all, himself and his family included. (*Matter of Viemeister,* 179 N. Y. 235, 241, 242.)

That bovine tuberculosis is transmissible through milk to human beings has already received judicial sanction, both in this and other States. Mr. Justice Edgcomb, an eminent jurist of our own district, in November, 1924, in commenting upon this question in the case of *Village of Herkimer* v. *Potter* (*supra*) said (at pp. 60, 61): "Defendant attacks the reasonableness of this provision. He says, and has produced the affidavits of four physicians in the village of Herkimer who say that it has never been definitely established as a scientific fact that bovine tuberculosis is transmitted through milk from the animal to human beings. That many prominent physicians and scientists entertain an opposite opinion is common knowledge and is also shown by the affidavits presented by the plaintiff. It may be that there is a difference of opinion among the medical fraternity on this question. If there is not, it would be the first question upon which the fraternity were in entire accord. In recent years eminent physicians have given their whole time and attention to the study of this dread disease, its causes and treatment. There are many able and competent physicians who believe, and many eminent writers who assert, that while there is a difference in the character of bovine and human bacilli, the bovine organism is capable of producing tuberculosis in man and that, inasmuch as bovine bacilli are distributed by means of milk, the danger of human beings contracting the disease from this source is not only real but serious. Children are especially susceptible to tuberculosis, not only of the lungs but of the bones, joints and glands. Eminent authority tells us that bovine tubercle bacillus conveyed in milk is the causative factor of such condition in many cases. It is idle to say that such precaution is useless. In the light of the testimony of prominent physicians who have given this subject years of study, and of the findings of various commissions in this and other lands, having this matter under investigation, no court would be justified in ignoring such a provision, which finds such strong support in the experience of these learned men, and in holding it to be useless, unnecessary and unreasonable, much less in saying that the adoption of such a regulation by a board charged with the duty of looking after the health, life and comfort of the people within its jurisdiction was an abuse of the discretion given it by the Legislature."

Furthermore, Mr. Justice EDGCOMB in the same matter held, at least inferentially, the statute complained of here as unconstitutional to be constitutional.

I am of the opinion that the statute is, in all respects, constitutional, and that it is in no way an unreasonable or unwarranted exercise of the police power upon the part of the Legislature of this State.

The defendant urges that an injunction should not be granted in this case because the milk of an animal afflicted with tuberculosis, if properly pasteurized, is wholesome food for public consumption, the sale of which is permitted in the city of New York and elsewhere in the State. The defendant also maintains that the plaintiff is not entitled to injunctive relief because there is no evidence that his herd is afflicted with tuberculosis. There would be force in these arguments, were it not for the fact that the quarantine was not directed against the herd because it is or was afflicted with tuberculosis or any other contagious disease, but rather because of the refusal and neglect of the defendant to have his herd tested.

Section 38 of the Farms and Markets Law provides: " In an action in the supreme court for the recovery of a penalty or forfeiture incurre⸱ ⸱ ⸱ the violation of any of the provisions of this chapter, or of any other law the enforcement of which is within the jurisdiction of the department or of the rules of the department, an application may be made on the part of the people to the court or any justice thereof for an injunction to restrain the defendant, his agents and employees from the further violation of such provisions. The court or justice to whom such application is made, shall grant such injunction on proof, by affidavit, that the defendant has been guilty of the violations alleged in the complaint, or of a violation of any such provision subsequent to the commencement of the action. No security on the part of the plaintiff shall be required, and costs of the application may be granted or refused in the discretion of the court or justice. If the plaintiff shall recover judgment in the action for any penalty or forfeiture demanded in the complaint, the judgment shall contain a permanent injunction, restraining the defendant, his agents and employees from any further violation of such provision of this chapter or of any other law the enforcement of which is within the jurisdiction of the department or of the rules of the department."

The foregoing section provides that if the plaintiff shall recover a penalty in a proper action, the judgment entered upon such recovery *shall contain a permanent injunction* restraining the defendant, etc.

I am of the opinion the plaintiff is entitled to recover in this case.

Surrogate's Court, New York County, September, 1926.　　[Vol. 129

Under a stipulation between the parties, it was agreed that, in the event the plaintiff was entitled to recover, the damages allowed should not exceed the sum of fifty dollars.

I deny the motion for nonsuit made at the close of the evidence, and give the defendant an exception to such ruling, and I find damages in favor of the plaintiff and against the defendant, arising out of the violations set forth in the complaint, in the amount of twenty-five dollars for each of the two violations, totaling the sum of fifty dollars, and I direct that judgment be entered in favor of the plaintiff against the defendant for the sum of fifty dollars penalty, and for a permanent injunction restraining and enjoining the defendant from any further violation of section 76 of the Farms and Markets Law, and restraining and enjoining him from removing or causing to be removed from his quarantined premises any product or products of his said untested herd of bovine animals. Findings may be prepared accordingly. If the parties cannot agree as to the form of the judgment, it may be settled before me on three days' notice.